FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 24, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TYLER A.,<br><br>                              Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                              Defendant. | NO:  4:24-CV-5082-RMP<br><br>ORDER GRANTING PLAINTIFF'S<br>BRIEF AND REMANDING FOR<br>FURTHER PROCEEDINGS |

BEFORE THE COURT, without oral argument, are briefs from Plaintiff Tyler A.[1], ECF No. 9, and Defendant the Commissioner of Social Security (the "Commissioner"), ECF No. 14.  Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of his claim for Disability Insurance Benefits ("DIB") under Title II, of the Social Security Act (the "Act").  *See* ECF No. 9 at 1–2.

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and last initial.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 1

1    Having considered the parties' briefs including Plaintiff's reply, ECF No. 15,

2    the administrative record, and the applicable law, the Court is fully informed.  For

3    the reasons set forth below, the Court grants judgment for Plaintiff and remands the

4    matter for further administrative proceedings.

5                                      **BACKGROUND**

6    ***General Context***

7    Plaintiff applied for SSI on approximately February 10, 2021, with an

8    amended alleged onset date of November 1, 2019.  Administrative Record ("AR")[2]

9    18, 20, 43, 289–97.  Plaintiff was 33 years old on the amended alleged disability

10   onset date and asserted that he was unable to work due to bipolar disorder, grade 2

11   pars defect, spondylolisthesis, bulged disc, and schizoaffective disorder.  AR 286,

12   378.  Plaintiff's application was denied initially and on appeal, and Plaintiff

13   requested a hearing.  On July 12, 2023, and December 6, 2023, Administrative Law

14   Judge ("ALJ") Lori Freund held telephonic hearings from Spokane, Washington.

15   AR 18, 40–109.  Plaintiff was present and represented by Chad Hatfield.  AR 40–42,

16   67–69.  The ALJ heard testimony from Plaintiff and from vocational experts ("VE")

17   Sharon Welter and Jay Stutz and from medical expert ("ME") Jeffrey Andert.  AR

18   40–42, 67–69.

19

20

21   _____

[2] The AR is filed at ECF No. 4.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 2

The ALJ issued an unfavorable decision on February 21, 2024, and the Appeals Council denied review.  AR 1–6, 18–31.

***ALJ's Decision***

Applying the five-step evaluation process, ALJ Freund found:

**Step one:** Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2023, and Plaintiff did not engage in substantial gainful activity ("SGA") from Plaintiff's amended alleged onset date of November 1, 2019, through his date last insured.  AR 20 (citing 20 C.F.R. § 404.1571 *et seq.*).

**Step two:** Plaintiff has the following severe impairments: cervical degenerative disc disease and schizoaffective disorder—bipolar type.  AR 20 (citing 20 C.F.R. §§ 404.1520(c)).  The ALJ memorialized that, due to "the inherently subjective nature of mental diagnoses . . . [Plaintiff's] psychological symptoms and their effect on their functioning have been considered together, instead of separately, regardless of the diagnostic label attached."  AR 21.  In addition, the ALJ found that alcohol use disorder, cannabis use disorder, and obesity are non-severe impairments, but the ALJ nonetheless considered obesity with all impairments in evaluating Plaintiff's residual functional capacity ("RFC").  AR 21 (citing 20 C.F.R. 404.1520(e) and 404.1545; SSR 96-8p).

**Step three:** Through the date last insured, Plaintiff did not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 3

1    1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  AR 21.  The ALJ

2    memorialized that she considered listings 1.15 and 1.16, addressing disorders of the

3    skeletal spine resulting in compromise of a nerve root and lumbar spinal stenosis

4    resulting in compromise of the cauda equina, respectively, and found that the

5    evidence in the record does not establish that Plaintiff's impairments are at listing-

6    level severity.  AR 21.  The ALJ further considered the severity of Plaintiff's mental

7    impairments, singly and in combination, under listings 12.03 and 12.04, addressing

8    psychotic disorders and depressive, bipolar, and related disorders, respectively.  AR

9    21.  The ALJ found that Plaintiff is "at most" mildly limited in understanding,

10   remembering, or applying information.  AR 21–22.  The ALJ further found Plaintiff

11   "no more than" moderately limited in interacting with others and in concentrating,

12   persisting, or maintaining pace, and moderately limited in adapting or managing

13   himself.  AR 22.  Finding that Plaintiff's impairments do not cause at least two

14   "marked" functional limitations or one "extreme" limitation, the ALJ found that the

15   "paragraph B" criteria were not satisfied.  AR 22.  In addition, the ALJ found that

16   the evidence in Plaintiff's record fails to establish the "paragraph C" criteria, which

17   requires a claimant to have minimal capacity to adapt to changes in their

18   environment or demands not already a part of their daily life.  AR 22.  The ALJ

19   found that the medical expert's testimony supports this finding and adds that "there

20   was no evidence of marginal adjustment, i.e., minimal capacity to adapt to changes

21

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 4

in his environment or to demands that were not already part of the claimant's daily life." AR 23 (citing AR 3554, 3694, 3708, 3711, 3754, and 3762).

**Residual Functional Capacity ("RFC"):** The ALJ concluded that Plaintiff has the RFC to:

> to lift up to 50 pounds occasionally and lift/carry up to 25 pounds frequently. He could stand and walk for at least 6 hours in an 8-hour workday and sit for at least 6 hours in an 8-hour workday. He could occasionally climb ladders, ropes, and scaffolds and occasionally crawl. He could frequently climb ramps and stairs, kneel, crouch, and stoop. He could perform simple and repetitive tasks with only occasional changes in a work setting. He could have occasional, superficial interaction with coworkers and supervisors. He should avoid working with the general public and would need to avoid any type of fast-paced assembly work.

AR 23.

In formulating Plaintiff's RFC, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[, . . .] the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 24.

**Step four:** The ALJ found that, through the date last insured, Plaintiff was capable of performing past relevant work as a tractor operator because the work did not require the performance of work-related activities precluded by Plaintiff's RFC. AR 29 (citing 20 C.F.R. § 404.1565).

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 5

**Step five:** The ALJ found that Plaintiff has a high school education and was 37 years old, which is defined as a younger individual (age 18-49), on the date last insured.  AR 29 (citing 20 C.F.R. §§ 404.1563 and 404.1564).  The ALJ found that transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  AR 29–30 (citing Social Security Ruling 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).  The ALJ further found that, given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in the national economy that Plaintiff can perform. AR 30.  The ALJ recounted that the VE testified that an individual with Plaintiff's RFC would be able to perform the requirements of representative occupations such as: floor waxer (medium, unskilled work with approximately 110,000 jobs nationwide), hand packager (medium, unskilled work with approximately 70,000 jobs nationwide), and industrial cleaner (light, unskilled work with approximately 37,000 jobs nationwide).  AR 30.

The ALJ concluded that Plaintiff was not under a disability, as defined in the Act, from November 1, 2019, the amended alleged onset date, through December 31, 2023, the date last insured.  AR 30 (citing (20 CFR § 404.1520(f)).

Through counsel, Plaintiff sought review of the ALJ's decision in this Court. ECF No. 1.

/ / /

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 6

## LEGAL STANDARD

### *Standard of Review*

Congress has provided a limited scope of judicial review of the Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" also will be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the Court considers the entire record, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

A decision supported by substantial evidence still will be set aside if the proper legal standards were not applied in weighing the evidence and making a

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 7

1  decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir.

2  1988).  Thus, if there is substantial evidence to support the administrative findings,

3  or if there is conflicting evidence that will support a finding of either disability or

4  nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*,

5  812 F.2d 1226, 1229–30 (9th Cir. 1987).

6    ***Definition of Disability***

7    The Act defines "disability" as the "inability to engage in any substantial

8  gainful activity by reason of any medically determinable physical or mental

9  impairment which can be expected to result in death, or which has lasted or can be

10  expected to last, for a continuous period of not less than 12 months."  42 U.S.C. §

11  423(d)(1)(A).  The Act also provides that a claimant shall be determined to be under

12  a disability only if the impairments are of such severity that the claimant is not only

13  unable to do their previous work, but cannot, considering the claimant's age,

14  education, and work experiences, engage in any other substantial gainful work

15  which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).  Thus, the

16  definition of disability consists of both medical and vocational components.  *Edlund*

17  *v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

18    ***Sequential Evaluation Process***

19    The Commissioner has established a five-step sequential evaluation process

20  for determining whether a claimant is disabled.  20 C.F.R § 404.1520.  Step one

21  determines if they are engaged in substantial gainful activities.  If the claimant is

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 8

engaged in substantial gainful activities, benefits are denied.  20 C.F.R. § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that they have performed in the past.  If the claimant can perform their previous work, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 9

economy considering their RFC, age, education, and past work experience.  20

C.F.R. § 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie

case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th

Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden

is met once the claimant establishes that a physical or mental impairment prevents

them from engaging in their previous occupation.  *Meanel*, 172 F.3d at 1113.  The

burden then shifts, at step five, to the Commissioner to show that (1) the claimant

can perform other substantial gainful activity, and (2) a "significant number of jobs

exist in the national economy" that the claimant can perform.  *Kail v. Heckler*, 722

F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

Plaintiff raises the following issues regarding the ALJ's decision:

1.    Did the ALJ erroneously assess the opinions of medical sources?

2.    Did the ALJ erroneously assess Plaintiff's impairments at step three?

3.    Did the ALJ erroneously discount Plaintiff's subjective symptom
      testimony?

4.    Did the ALJ err in her analysis at step four and step five?

### *Medical Source Opinions*

Plaintiff argues that the ALJ erroneously rejected the disabling opinion of

psychologist David T. Morgan, PhD, without sufficiently considering its consistency

or supportability, and also erroneously found the testimony of medical expert

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 10

1   psychologist Jeffrey Andert, PhD to be persuasive "despite Dr. Andert's failure to

2   account for [Plaintiff's] side effects of medication of excessive sleeping, napping,

3   and dozing off."  ECF No. 9 at 9–10.

4        The Commissioner responds that the ALJ provided substantial evidence to

5   support her treatment of both medical expert Dr. Andert and evaluating psychologist

6   Dr. Morgan.  ECF No. 14 at 6.

7        The Court addresses each challenged medical source opinion in turn.

8        The regulations that took effect on March 27, 2017, provide a new framework

9   for the ALJ's consideration of medical opinion evidence and require the ALJ to

10  articulate how persuasive he finds all medical opinions in the record, without any

11  hierarchy of weight afforded to different medical sources.  *See* Rules Regarding the

12  Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18,

13  2017).  Instead, for each source of a medical opinion, the ALJ must consider several

14  factors, including supportability, consistency, the source's relationship with the

15  claimant, any specialization of the source, and other factors such as the source's

16  familiarity with other evidence in the claim or an understanding of Social Security's

17  disability program.  20 C.F.R. § 404.1520c(c)(1)-(5).

18       Supportability and consistency are the "most important" factors, and the ALJ

19  must articulate how he considered those factors in determining the persuasiveness of

20  each medical opinion or prior administrative medical finding.  20 C.F.R. §

21  404.1520c(b)(2).  With respect to these two factors, the regulations provide that an

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 11

opinion is more persuasive in relation to how "relevant the objective medical evidence and supporting explanations presented" and how "consistent" with evidence from other sources the medical opinion is. 20 C.F.R. § 404.1520c(c)(1). The ALJ may explain how he considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record. 20 C.F.R. § 404.1520c(b)(2), (3). Courts also must continue to consider whether the ALJ's finding is supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

Prior to revision of the regulations, the Ninth Circuit required an ALJ to provide clear and convincing reasons to reject an uncontradicted treating or examining physician's opinion and provide specific and legitimate reasons where the record contains a contradictory opinion. *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). However, the Ninth Circuit has held that the Social Security regulations revised in March 2017 are "clearly irreconcilable with [past Ninth Circuit] caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The Ninth Circuit continued that the "requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, is likewise incompatible with the revised regulations." *Id*. at *15

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 12

(internal citation omitted).  The Ninth Circuit further has held that the updated

regulations comply with both the Social Security Act and the Administrative

Procedure Act, despite not requiring the ALJ to articulate how he or she accounts for

the "examining relationship" or "specialization factors."  *Cross v. O'Malley*, No. 23-

35096, 2024 U.S. App. LEXIS 302 at *7–12 (9th Cir. Jan. 5, 2024).

Accordingly, as Plaintiff's claim was filed after the new regulations took

effect, the Court refers to the standard and considerations set forth by the revised

rules for evaluation of medical evidence.  *See* AR 18, 20, 43, 289–97.

### Dr. Morgan

Plaintiff argues that the ALJ erred by discounting Dr. Morgan's opinion, and

instead "blindly accepting" Dr. Eisenhauer's opinion that Plaintiff's mental status

examination performance outside of normal limits was the result of low effort or

malingering, when Dr. Eisenhauer did not examine Plaintiff or explain the basis for

her low effort/malingering opinion.  ECF Nos. 9 at 11–12; 15 at 2–3.  Plaintiff

continues by arguing that the ALJ also erred when she found the medical expert's

opinion persuasive, but failed to reconcile the discrepancy between Dr. Eisenhauer's

opinion that Plaintiff gave low effort or was malingering and Dr. Andert's testimony

that the digit span examination "would not have been an objective test of

malingering," and that Dr. Andert did not see malingering "as a concern in terms of

any other records with regard to the evidence, testament, or his treatment."  ECF No.

15 at 3 (citing AR 88).

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 13

The Commissioner defends the ALJ's treatment of Dr. Morgan's opinion, and Dr. Eisenhauer's review of Dr. Morgan's opinion, by citing to the Ninth Circuit decision in *Woods* that abandoned the hierarchy of medical opinions and, in light of the revised regulations, held that an ALJ's decision "'must simply be supported by substantial evidence.'"  ECF No. 14 at 8 (quoting *Woods*, 32 F.4th at 787).  The Commissioner adds that although the medical expert testified that the digit span mental status examination inquiry "would not have been an objective test of malingering," Dr. Andert recognized that the digit span responses were "'unusually low scores to someone particularly with this apparent cognitive capability,' concluding only that 'the interference of psychiatric symptoms would be another possibility.'"  *Id.* at 8–9 (quoting AR 88).  The Commissioner points out that Dr. Andert testified only that psychological symptoms "could be" a reasonable explanation for why someone with a history of doing well in education could test unusually low, not that psychological symptoms are the only reasonable explanation. *Id.* at 9.  The Commissioner further argues that the ALJ relied on factors in addition to possible malingering to find Dr. Eisenhauer's opinion more persuasive than Dr. Morgan's.  *Id.* at 9.

Dr. Morgan evaluated Plaintiff on July 13, 2023, for the Washington State Department of Social and Health Services ("DSHS") and found Plaintiff's ability to work to be impaired by daily, moderate-to-severe excessive anxiety and worry  and by daily, moderate-to-severe depression and psychosis, manifesting as "major

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 14

relational impairment, delusions, hallucinations, negative symptoms, depressed

mood, anhedonia, too much sleep, fatigue, agitation, feelings of worthlessness, [and]

poor concentration.".  AR 3724.  Dr. Morgan found Plaintiff to be markedly

impaired in eight basic work activities, moderately impaired in four activities, and

mildly impaired in one activity.  AR 3725.  Dr. Morgan assessed Plaintiff as

markedly impaired overall and opined that Plaintiff's impairment would last for

twelve months.  AR 3725.  Dr. Morgan's mental status examination of Plaintiff

found normal speech; cooperative attitude and behavior; depressed mood; normal

affect; client-reported delusional thought patters; client-reported hallucinations;

immediate memory outside of normal limits; concentration outside of normal limits;

and abstract thought outside of normal limits.  AR 3727.

The ALJ found that Dr. Morgan's assessment of marked restriction in

performing activities within a schedule; maintaining regular attendance; being

punctual within customary tolerances without special supervision; and maintaining

appropriate behavior in a work setting was supported by Dr. Morgan's limited

examination in which Plaintiff reported experiencing delusions and hallucinations.

AR 28 (citing AR 3725).  The ALJ also noted that Dr. Morgan recorded Plaintiff's

"inadequate performance on digit span for measurement of immediate memory and

limited concentration as he could not spell 'world' backward."  AR 28 (citing AR

3727).  However, the ALJ continued, "a subsequent DSHS review highlighted that

1    [Plaintiff's] performance suggested both low effort or malingering and as such

2    results did not represent Plaintiff's actual abilities."  AR 28 (citing AR 3729).

3          The subsequent DSHS review was conducted by R. Renee Eisenhauer, PhD,

4    who found the diagnoses included in Dr. Morgan's assessment to be supported by

5    the objective medical evidence but the severity and functional limitations only

6    partially supported by the available medical evidence.  AR 3729–30.  Dr. Eisenhauer

7    reasoned that Plaintiff presented to Dr. Morgan with normal speech and full

8    orientation, but Plaintiff's responses to some of the mental status examination

9    questions "suggested both low effort or malingering."  AR 3729.  Dr. Eisenhauer did

10    not explain what in the record she reviewed that indicated that Plaintiff's responses

11    suggested low effort or malingering.  Dr. Eisenhauer further found: "There is

12    insufficient objective support that the claimant is unable to pose simple questions or

13    request assistance.  Notably, the claimant is in the process of requesting assistance

14    presently. No more than mild to moderate limitations are supported in regard to this

15    matter."  AR 3729.

16          The ALJ proceeded to find Dr. Eisenhauer's assessment of mild to moderate

17    limitations persuasive because Dr. Eisenhauer supported her opinion by referring to

18    Plaintiff's independence in his activities of daily living and because Dr. Eisenhauer's

19    opinion is "consistent with other mental health records showing much of the same."

20    AR 28 (citing AR 3686–3722, 3741–3772).

21

1    While the Commissioner is correct that whether Dr. Eisenhauer examined

2    Plaintiff is no longer determinative of how much weight the ALJ should give her

3    opinion, *see* 20 C.F.R. § 404.1520(c); *Woods*, 32 F.4th at 791, the ALJ still must

4    have considered the supportability and consistency of Dr. Morgan's and Dr.

5    Eisenhauer's opinions; each source's relationship with the claimant; any

6    specialization of the source; and other factors such as the source's familiarity with

7    other evidence in the claim or an understanding of Social Security's disability

8    program.  20 C.F.R. § 404.1520c(c)(1)-(5).  The ALJ noted that the marked

9    limitations found by Dr. Morgan were supported by the "limited exam" in which

10   Plaintiff reported experiencing delusions and hallucinations.  AR 28.  However, the

11   ALJ discounted Dr. Morgan's opinion because the subsequent review by Dr.

12   Eisenhauer "highlighted that the claimant's performance suggested both low effort

13   or malingering and as such results did not represent the claimant's actual abilities."

14   AR 28 (citing AR 3729).   Yet Dr. Eisenhauer does not support the low

15   effort/malingering assertion with further reasoning or explanation, and there is no

16   citation to any other record that is consistent with this finding.  *See* AR 3729.

17   Moreover, Dr. Eisenhauer could not have observed Plaintiff's making a low effort or

18   malingering in responding to the mental status examination question because she did

19   not examine him.  AR 3729.

20       As the parties discuss, testifying medical expert Dr. Andert acknowledged that

21   Plaintiff's digit span responses were "significantly below what you would expect

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 17

1    from somebody at that range of intelligence."  AR 88–89.   However, Dr. Andert's

2    testimony is not substantial support for Dr. Eisenhauer's low effort/malingering

3    opinion because Dr. Andert added that "interference of psychiatric symptoms" could

4    have explained Plaintiff's low scores on the digit span portion of the mental status

5    examination.  *See* AR 88.  The ALJ does not demonstrate that she considered

6    supportability, consistency, Dr. Eisenhauer's relationship with Plaintiff, or

7    familiarity with other evidence in finding that Dr. Eisenhauer's low

8    effort/malingering opinion undermined Dr. Morgan's marked limitation findings.

9         Next, the ALJ found Dr. Eisenhauer's opinion of mild or moderate limitations

10   persuasive, and by inference, Dr. Morgan's marked limitations not persuasive,

11   because Plaintiff "admitted" to doing well overall, with compliance with

12   medications, and performing various activities such as attending and chairing

13   Alcoholic Anonymous ("AA") meetings.  AR 28 (citing AR 3694, 3708, 3711, and

14   3758).  The records cited by the ALJ here do not substantially support that Plaintiff

15   admitted to doing well overall or engaging in extensive daily activities that could

16   translate to full-time work.  In the November 2022 treatment note, Plaintiff reported

17   "probably getting worse"; finding "himself more withdrawn"; getting rides to three

18   to five AA meetings per week, two of which he chairs; and taking a one-week break

19   from video games while he downloaded a new version while also spending time on a

20   Facebook group for a baseball player.  AR 3694.  In October 2022, Plaintiff reported

21   being compliant in taking medication, but also reported increased stress and

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 18

excessive sleeping.  AR 3708.  Plaintiff also reported playing a multi-play video game one to two hours per day and chairing two AA meetings per week.  AR 3708. These records indicate that Plaintiff was reporting a decline or ongoing issues while taking medication and endorsed only activities that could be flexibly scheduled and completed in brief intervals punctuated by periods of rest.  *See Hamilton v. Colvin,* 525 Fed. Appx. 433, 438 (7th Cir. 2013) ("We have admonished ALJs to appreciate that, unlike full-time work, the 'activities of daily living' can be flexibly scheduled.").

Consequently, the ALJ did not demonstrate that she carefully considered whether Plaintiff's attendance at between two and five AA meetings per week, some as a meeting leader; playing video games for a portion of the day; and independence in some daily living activities translate into an ability to work full-time or are consistent with the limitations that Dr. Morgan assessed.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049–50 (9th Cir. 2001) (holding that a claimant's ability to leave the house, shop for groceries, and spend time with friends was not a valid reason to discount her testimony).

On this record, the Court does not find that the ALJ's reasons for determining Dr. Eisenhauer's opinion to be more persuasive than Dr. Morgan's are supported by substantial evidence.  As this touches upon the severity of Plaintiff's work-related limitations and formulation of the RFC, this is harmful error warranting remand.

/ / /

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 19

1          Dr. Andert

2          Plaintiff maintains that the ALJ erred in finding medical expert Dr. Andert's

3     testimony persuasive when Dr. Andert did not account for Plaintiff's side effects of

4     one of Plaintiff's medications in the form of sleeping, napping, and dozing off.  ECF

5     No. 9 at 8.  Plaintiff contends that the ALJ was required to address the side effects

6     by Social Security Ruling 16-3p.  *Id.*  The Commissioner responds that Dr. Andert

7     "expressly testified that daytime fatigue was *not* a side effect of Plaintiff's

8     medication."  ECF No. 14 at 6.  Plaintiff replies that despite his testimony that

9     though Vraylar helped relieve his mania symptoms, Plaintiff was sleeping sixteen

10    hours per day and taking naps, Dr. Andert "did not consider [Plaintiff's] fatigue and

11    excessive sleeping due to side effects [sic] Vraylar medication when offering his

12    opinion."  ECF No. 15 at 6.  Plaintiff further cites the Court to a Mayo Clinic

13    website indicating that "'sleepiness or unusual drowsiness' is a 'more common'

14    common [sic] side effect of Vraylar (cariprazine)."  *Id.* (citing

15    https://www.mayoclinic.org/drugssupplements/cariprazine-oral-

16    route/description/drg-20152634).

17          Plaintiff reported in treatment notes as well as in his hearing testimony that

18    taking Vraylar each morning kept him from feeling manic, but that he was

19    persistently tired and slept excessively.  AR 93–94, 3711, and 3718.  Plaintiff's

20    counsel asked Dr. Andert, "Now, is fatigue considered as a [sic] the side effect of the

21    medications, or is that outside your expertise?"  AR 84.  Dr. Andert responded, "No,

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 20

1    I do not."  AR 84.  The meaning of Dr. Andert's response is not clear to the Court.

2    Dr. Andert did not further address Plaintiff's reported excessive sleep and fatigue.

3        The ALJ found persuasive Dr. Andert's opinion that Plaintiff retains "a

4    capacity for unskilled work of up to 4 steps with no fast pace and no more than

5    occasional contact with the public."  AR 27.  The ALJ reasoned that Dr. Andert's

6    opinion was persuasive because it was "supported [by] the most expansive review of

7    the record, including treatment notes received at the hearing level and is consistent

8    with the totality of evidence, such complaints and signs of tangential or scattered

9    thinking along with mental status exams as a whole documenting attention within

10   normal limits and doing well with medication management."  AR 27–28 (citing

11   3688, 3699, 3707, 3709, 3712, 3719, 3721, 3745, and 3751.  However, in the same

12   records that the ALJ cites, Plaintiff reports napping throughout the day while also

13   reporting being compliant with his medications, including Vraylar.  *See* AR 3688,

14   3708–09, and 3718–19.  Dr. Andert's opinion appears to be incomplete for failing to

15   address these alleged side effects and/or symptoms.

16       The ALJ found Dr. Andert's opinion persuasive based on Dr. Andert's

17   expansive review of the record even though Dr. Andert did not address the excessive

18   sleeping and fatigue that Plaintiff alleges is a side effect of one of his medications.

19   There is an unresolved question in this matter whether Plaintiff experiences

20   persistent fatigue and excessive daytime sleep as a side effect of his medication and

21   what effect that side effect, if any, has on Plaintiff's RFC.  Medication side effects

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 21

are a relevant factor for an ALJ to consider in determining whether a claimant is limited in his ability to work. *See Jackson v. Colvin*, No. 13-1560, 2014 U.S. Dist. LEXIS 70644, 2014 WL 2154260, at * 1 (W.D. Wash. May 22, 2014) ("An ALJ should consider all factors that might have a significant impact on an individual's ability to work, including side effects of medications"); *Varney v. Secretary of HHS*, 846 F.2d 581, 585 (9th Cir. 1987)["[I]f the Secretary chooses to disregard a claimant's testimony as to the subjective limitations of side effects, he must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medication(s)"] *relief modified,* 859 F.2d 1396 (1988), *overruled by statute on other grounds in Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991); *Figueroa v. Secretary of HEW*, 585 F.2d 551, 554 (1st Cir. 1978) (holding that an ALJ must make finding on appellant's claim regarding side effects of medication); *see also Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (holding that the ALJ's discussion of the evidence must be sufficient to "assure [the court] that she considered the important evidence . . . [and to enable the court] to trace the path of her reasoning").

Accordingly, the Court finds that the ALJ's assessment of the persuasiveness of Dr. Andert's opinion is not supported by substantial evidence because the medical expert did not address the allegation of a medication side effect, raised by Plaintiff's attorney during the hearing and referred to in records cited by the ALJ for support.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 22

1      ***Remedy***

2             Having found reversible error in the evaluation of medical source opinions,

3      the Court must determine the appropriate remedy.  The Ninth Circuit Court of

4      Appeals has held that "[a] district court may reverse the decision of the

5      Commissioner of Social Security, with or without remanding the cause for a

6      rehearing, but the proper course, except in rare circumstances, is to remand to the

7      agency for additional investigation or explanation." *Dominguez v. Colvin*, 808 F.3d

8      403, 407 (9th Cir. 2016) (quotations omitted). A court should take the exceptional

9      step of remanding for an immediate award of benefits only where:

10            (1) The ALJ has failed to provide legally sufficient reasons for rejecting
              . . . evidence [probative of disability], (2) there are no outstanding issues
11            that must be resolved before a determination of disability can be made,
              and (3) it is clear from the record that the ALJ would be required to find
12            the claimant disabled were such evidence credited.

13            *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (internal quotation

14     omitted).  By contrast, remand is appropriate when additional administrative

15     proceedings could remedy defects.  *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.

16     1989). Even if these requirements are met, the court retains "flexibility" to "remand

17     for further proceedings when the record as a whole creates serious doubt as to

18     whether the claimant is, in fact, disabled within the meaning of the Social Security

19     Act." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).

20            As the record here is not free from conflicts and ambiguities, Plaintiff's

21     entitlement to benefits is not clear at this stage and remand for benefits is not

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 23

appropriate.  *See, e.g.,* AR 3753–54 (June 2023 treatment record in which Plaintiff "denies having any side effects to the medication.").

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ erred in her assessment of medical source opinions and, as a result, possibly in the formulation of the RFC.  Accordingly, **IT IS HEREBY ORDERED** that:

1.    Plaintiff's Opening Brief, **ECF No. 9**, is **GRANTED**.

2.    Defendant the Commissioner's Brief, **ECF No. 14**, is **DENIED**.

3.    The decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this decision.

4.    The District Court Clerk shall amend the docket in this matter to substitute Frank Bisignano as the Commissioner of the Social Security Administration.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close the file** in this case.

**DATED** June 24, 2025.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
Senior United States District Judge

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 24